MARIO DE MINICIS et al., Respondents-Appellants, *v.* 148 EAST 83RD STREET, INC., et al., Appellants-Respondents.

First Department, January 30, 1964.

*Alfred W. Charles* of counsel (*Alfred S. Holems,* attorney), for respondents-appellants.

*William L. Messing* of counsel (*McLaughlin, Fougner & Messing,* attorneys), for appellants-respondents.

*William J. Condren* of counsel (*Alfred S. Holmes,* attorney), for respondents-appellants.

BASTOW, J. In 1954 the premises at 148 East 83rd Street in Manhattan consisted of a walk-up tenement, five stories high, containing 10 six-room apartments occupied by statutory tenants paying fixed maximum rents ranging from monthly sums of $57.50 to $72.45. In that year the defendant, Carsen, purchased the premises for $40,000 and placed title in 148 East 83rd Street, Inc. (herein " 148 East "). This corporation had been organized by Carsen and all of its 10 authorized shares were issued to him.

Thereafter Carsen devised a plan (in complete disregard of the State Emergency Housing Rent Control Rent Law [L. 1946, ch. 274, as amd.] and State Rent and Eviction Regulations adopted pursuant thereto) to make the building a co-operative. Briefly stated, the plan envisioned that one share of 148 East would be allocated to each so-called tenant-owner. The latter would receive a 99-year lease on an apartment and would agree to pay at least two basic forms of rent. The first was denominated maintenance rent at a stated monthly sum to cover 1/120th of the estimated annual cost of maintaining and operating the building. This was subject to adjustment after two years by the board of directors. The second rental was called " leasehold lien rent " and was based upon the sale price of the one share of 148 East. The monthly payment represented 1/12th of the annual interest at 6% on the unpaid purchase price of the share of stock. All unpaid principal was due at the end of 30 years.

On April 3, 1957 plaintiffs entered into a so-called proprietary lease agreement with 148 East, as owner, and Carsen, as " leasehold lien holder of record " by the terms of which plaintiffs agreed to pay monthly maintenance rent of $41 and leasehold lien rent of $80 monthly or a total of $121. The amount of $80 represented annual interest of $960 upon the sum of $16,000. The total-so-called lien rent was $18,000. Plaintiffs paid $2,000 thereon when the lease was executed and agreed to pay $16,000 on April 1, 1987. The lease terminated on February 1, 2055.

It is not disputed that between the time of the purchase of the building by 148 East in 1954 and its lease to plaintiffs in 1957 extensive alterations had been made to the apartment. Carsen alleges that some $11,000 was so expended. The former six rooms were changed to four and the space was otherwise renovated and remodeled. Lastly, and most important, it is not disputed that the registered maximum monthly rent for the apartment during all this time has been $59.25.

This action was commenced in February, 1962. The complaint, as amended, contains seven causes of action. We are here concerned with only the sixth and seventh causes wherein

plaintiffs seek a declaration that the lease agreement is null and void and should be rescinded. In addition plaintiffs seek to recover $2,000 paid upon the signing of the lease in April, 1957 and the difference between the maintenance and lien rent of $121 monthly and the registered maximum monthly rent of $59.25 for the period from April, 1957 to January, 1962. Such recovery is sought in the sixth cause on the ground that the payments were overcharges for rent made in violation of the order fixing the maximum rent for the accommodations. Such action is authorized by statute (State Emergency Housing Rent Control Law, § 11, subd. 5; L. 1946, ch. 274, as amd.). The seventh cause sought a similar recovery based on allegations of unjust enrichment.

Plaintiffs moved for summary judgment on these two causes of action. Special Term granted the motion to the extent of directing cancellation of the lease and awarding plaintiffs judgment for $2,000 — the amount of the down payment paid under the guise of leasehold lien rent. It denied recovery of the excess maintenance rental paid without prejudice to the recovery thereof upon establishment of the applicable maximum rent for the apartment.

Defendants appeal from so much of the order as granted judgment rescinding the agreement and awarding plaintiffs $2,000 — the amount of the down payment. Plaintiffs appeal from so much of the order as denied their motion for summary judgment on the seventh cause of action.

Special Term was correct in directing rescission of the agreement. Both statute and regulations make it unlawful, regardless of any contract, for any person to receive any rent for housing accommodations in excess of the maximum fixed rent. (State Emergency Housing Rent Control Law, § 10, subd. 1; L. 1946, ch. 274, as amd.; State Rent and Eviction Regulations, § 61.) Defendants have presented no triable issue as to this phase of the case and judgment summarily granted rescinding the agreement was proper.

It was error, however, to award plaintiff judgment for the sum of $2,000. This represented the down payment made in April, 1957. Defendants in their answer allege a separate defense that such recovery was barred because the various payments were made more than two years prior to the commencement of the action. This defense was a complete bar to the recovery of the $2,000 paid to defendants some five years before commencement of this action. The statute provides that "If any landlord who receives rent from a tenant violates a regulation or order prescribing the maximum rent with respect to

the housing accommodations for which such rent is received from such tenant, the tenant paying such rent may, within two years from the date of the occurrence of the violation '' bring an action on account of the overcharge. (State Emergency Housing Rent Control Law, § 11, subd. 5; L. 1946, ch. 274, as amd. by L. 1957, ch. 755.)

Moreover, this Statute of Limitations is an effective bar insofar as plaintiffs are attempting to recover sums paid monthly in excess of the fixed maximum rent for the period antedating two years prior to the commencement of this action on February 23, 1962.

For a different reason the seventh cause of action is legally insufficient. This cause, as heretofore stated, seeks recovery on the theory of unjust enrichment of all of the alleged overpayments covering a period of nearly five years. It is a '' familiar rule in the construction of statutes that where a new right is created, or a new duty imposed by statute, if a remedy be given by the same statute for its violation or non-performance, the remedy given is exclusive.'' (*Drinkhouse* v. *Parka Corp.,* 3 N Y 2d 82, 88. See, also, *Rosner* v. *Textile Binding & Trimming Co.,* 300 N. Y. 319, 324.) The right to the recovery of damages for overcharges of rent is wholly the creature of the emergency rent control statutes and plaintiffs are limited to a pursuit of the statutory cause of action. (Cf. *Kravitz* v. *Nankin,* 200 Misc. 219.) While the issue is not before us it should be noted that this same legal principle applies to the first, second and fourth causes of action of the complaint that are based on allegations of fraud and deceit (first cause), unjust enrichment (second cause) and willful overcharges (fourth cause).

Thus, we arrive at the conclusion that the sixth cause of action is legally sufficient insofar as it seeks to recover payments made by plaintiffs under the guise of rent in excess of the maximum fixed rent for the period commencing two years before commencement of action. Special Term correctly decided, however, that summary judgment could not be granted as to any of these payments.

In order for plaintiffs to recover on their statutory cause of action the burden is on them to establish that the apartment for which the rent was paid is the same accommodation for which the maximum rent had been fixed. (*Garcia* v. *Deibert,* 10 A D 2d 349, 351; *Weiderman* v. *Recklinghausen,* 278 App. Div. 289, 291.) Defendants, as has been stated, present proof that substantial alterations were made to the apartment and the cost thereof was $11,000. This presents a triable issue as the legal maximum is controlling only for the specific accommodations

for which it was established. What action, if any, plaintiffs may take in the meantime for the fixation of a proper maximum for the new accommodations is for them to decide (cf. *Garcia* v. *Deibert, supra,* p. 352). In the event such rent is fixed anew pursuant to subdivision (c) of section 36 of the State Rent and Eviction Regulations it may be made effective as of May 1, 1950, or the date of first renting, whichever is later (*Felton* v. *Leo-Dor Realty Corp.,* 285 App. Div. 460).

The order entered October 25, 1962 should be modified to the extent of reversing so much thereof as granted plaintiffs judgment against defendants in the sum of $2,000. The seventh cause of action in the complaint should be dismissed and as so modified the order should be affirmed, without costs.

RABIN, J. (dissenting). I dissent to the extent that I would affirm that portion of the order appealed from as granted plaintiffs judgment against the defendants for $2,000 — the amount paid by plaintiffs in connection with the execution of the proprietary lease agreement. It seems that the majority position is that the $2,000 sought to be recovered is excess " rent " within the meaning of the rent control law and therefore the two-year period of limitation is applicable.

I do not consider that payment — albeit denominated by the agreement as " leasehold lien rent " — as " rent " within the contemplation of the provisions of the rent control law treating with overcharges (Emergency Housing Rent Control Law, § 11, subd. 5; L. 1946, ch. 274, as amd.). It was, in effect, a deposit paid in anticipation of the acquisition of proprietary rights in the co-operative. This being so the plaintiffs' right to a recovery of such sum does not flow from the rent control statute but rather stems from their common-law right to recover the deposit paid on the instant contract which has been rescinded. The two-year statute is therefore inapplicable.

BOTEIN, P. J., BREITEL and STEVENS, JJ., concur with BASTOW, J.; RABIN, J., dissents in opinion.

Order, entered on October 25, 1962, modified to the extent of reversing so much thereof as granted plaintiffs judgment against defendants in the sum of $2,000. The seventh cause of action in the complaint is dismissed, and, as so modified, the order is affirmed, without costs.

Settle order on notice.