323 F.3d 1294
 James J. TRAVERS, Plaintiff-Appellee,
v.
Vernon JONES, Individually and in his official capacity as Chief Executive Officer of DeKalb County, Georgia, Scott B. Wilder, Individually and in his official capacity as Fire Chief of DeKalb County, Georgia, Defendants-Appellants.
 No. 02-14043 Non-Argument Calendar.
 United States Court of Appeals, Eleventh Circuit.
 March 11, 2003.
 
 Melanie F. Wilson, William J. Linkous, III, Charles G. Hicks, DeKalb County Law Dept., Decatur, GA, for Defendants-Appellants.
 Alan Leroy Parks, Jr., Atlanta, GA, for Plaintiff-Appellee.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before TJOFLAT, BIRCH and RONEY, Circuit Judges.
 PER CURIAM:
 
 
 1
 This is an appeal from a denial of qualified immunity to the two defendant-appellants, Vernon Jones, Chief Executive Officer of DeKalb County ("CEO Jones"), and Scott Wilder, Fire Chief of DeKalb County ("Chief Wilder"). Neither party has requested oral argument. Wilder had disciplined firefighter James J. Travers by suspending Travers for thirty days without pay due to insubordination and conduct unbecoming on/off duty involving CEO Jones. Travers' complaint alleged that he was disciplined in retaliation for his having engaged in protected union activity, and that CEO Jones and Chief Wilder had thus violated his First Amendment rights of free speech, freedom of association, and freedom of petition. The district court denied qualified immunity on the ground that there were issues of fact concerning the reasons that Travers was disciplined. We hold that, pursuant to the settled law concerning "fact preclusion," the facts had been found favorably to the defendants by an administrative hearing officer, and under those facts by which plaintiff was bound, their conduct did not violate Travers' constitutional rights. We therefore REVERSE the judgment of the district court denying the defendants' qualified immunity.
 
 
 2
 Briefly, firefighter Travers was involved in a verbal exchange with CEO Jones while Travers and a group of other fire-fighters were picketing outside the County's administration building during his off-duty hours. Chief Wilder suspended Travers for thirty days without pay for his insubordinate and unbecoming conduct during the verbal exchange with CEO Jones. No individual, other than Travers, was disciplined by Chief Wilder for simply picketing in front of the County administration building.
 
 
 3
 As presented to the district court, there was a sharp conflict between the plaintiff and the defendants as to what transpired at that time. The district court properly determined that the merits of the case turn on whether the plaintiff's or the defendants' version of the facts is correct.
 
 
 4
 Once the defendants established that they were acting within their discretionary authority, a point not in dispute here, the burden shifted to the plaintiff to show that qualified immunity is inappropriate. See Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir.2002). The plaintiff had to allege facts that show that the officer's conduct violated a clearly established constitutional right. See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); Chesser v. Sparks, 248 F.3d 1117, 1122 (11th Cir.2001).
 
 
 5
 The law is clearly established that an employer may not demote or discharge a public employee for engaging in protected speech. See Rankin v. McPherson, 483 U.S. 378, 383, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); Chesser, 248 F.3d at 1122. An employer may, however, discipline an employee for insubordination. "The First Amendment does not require a public employer to tolerate an embarrassing, vulgar, vituperative, ad hominem attack, simply because the employee ... was waving the [political] sign while conducting the attack." Morris v. Crow, 117 F.3d 449, 458 (11th Cir.1997); see Chesser, 248 F.3d at 1125 (stating that "[w]e can find no concrete and factually defined case that has held unconstitutional an employer's decision to discharge an employee due in part to insubordination").
 
 
 6
 Under the plaintiff's version of the facts, he was indeed engaging in protected speech and the first principle above would apply. Generally, when there are issues of fact such as these, qualified immunity must be denied because the court, at this stage of the proceedings, must view the facts most favorable to the plaintiff. See Chesser, 248 F.3d at 1121. Under the defendants' version, Travers was insubordinate and engaged in unbecoming conduct, so that the second principle would apply.
 
 
 7
 This issue of fact between the parties, however, has been resolved in the state administrative proceeding. Travers, represented by counsel, appealed to a merit system hearing officer pursuant to the Code of DeKalb County. The hearing officer made the following findings regarding the exchange between CEO Jones and Travers in a written report: Travers was participating in a picket demonstration in front of the administration building. As CEO Jones exited the building, Travers turned to him and repeatedly chanted Jones's first name in a "loudly, menacingly and taunting manner." CEO Jones approached Travers and asked whether he was a County employee. Travers acknowledged that he was a County employee exercising his rights as a citizen. CEO Jones told Travers that while he did not mind that Travers was exercising his rights, he would not tolerate Travers' insubordinate actions. Travers then said that he needed to take off his sunglasses so that he could look into CEO Jones's eyes. CEO Jones repeated that he would not tolerate Travers' insubordinate actions and walked away. The verbal exchange between Jones and Travers was observed and corroborated by the Assistant County Administrator, as well as the Director of Public Works. The hearing officer found that his findings did not indicate any non-job-related factor or any errors of fact that would reverse the Chief Wilder's 30 days' suspension of Travers for insubordination and conduct unbecoming on/off duty.
 
 
 8
 Those findings are binding upon the court in a case such as this one if the employee received a full and fair opportunity to present his case in the administrative hearing. When a state agency, acting in a judicial capacity, resolves disputed issues of fact properly before it that the parties have had an adequate opportunity to litigate, federal courts must give the agency's fact finding the same preclusive effect to which it would be entitled in the State's court. See University of Tenn. v. Elliott, 478 U.S. 788, 799, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). Under Georgia law, once an administrative body rules on questions of fact, the questions of fact are thereafter precluded from re-litigation. See Jordan v. Board of Pub. Safety, 253 Ga.App. 339, 559 S.E.2d 94, 97 (Ga.Ct.App. 2002); Blackwell v. Georgia Real Estate Comm'n, 205 Ga.App. 233, 421 S.E.2d 716, 717 (Ga.Ct.App.1992). Contrary to the decision of the district court, it appears that Travers did receive a full and fair opportunity to litigate at an administrative hearing.
 
 
 9
 Travers argues that he was denied full and fair opportunity to litigate his case at the County Merit System hearing. First, he asserts that two impartial eyewitnesses would have provided testimony that directly refuted testimony that Travers was taunting, disrespectful, or insubordinate. That is, Travers argues that his inability to compel these witnesses to testify resulted in a misleading and incomplete record. Second, Travers argues that he was denied meaningful opportunity to cross-examine his opposing witness because he was not permitted to compel the attendance of Jones to the hearing.
 
 
 10
 The DeKalb County Employee Disciplinary Action Appeal Administrative Procedures set forth procedural requirements for identifying and notifying witnesses of a party's desire for their presence. Specifically, the procedures state that the Merit System Director cannot compel the attendance of any county employee unless the requesting party, Travers in this case, does so at least five working days before the hearing.
 
 
 11
 Travers requested that the Merit System Director notify several witnesses of their desired presence at the hearing less than five working days before the hearing was scheduled. This is not disputed. Because Travers' request was less than five working days before the hearing, any inability to present live witnesses is due to Travers' own inaction. "The fact that [the plaintiff] failed to avail himself of the full procedures provided by the state law does not constitute a sign of their inadequacy." Kremer v. Chemical Constr. Co., 456 U.S. 461, 485, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) (concluding that administrative proceedings were proper in an employment discrimination context).
 
 
 12
 Contrary to Travers' assertion, a party has no right to subpoena witnesses to state administrative hearings. See, e.g., Amundsen v. Chicago Park Dist., 218 F.3d 712, 717 (7th Cir.2000); Calvin v. Chater, 73 F.3d 87, 92 (6th Cir.1996); DeLong v. Hampton, 422 F.2d 21, 24-25 (3d Cir.1970) (refusing to recognize a right to subpoena witnesses to an administrative hearing). The County afforded Travers the opportunity to a hearing where he could present live witnesses and cross-examine opposing witnesses. Travers' inability to do so was a result of his own tardiness.
 
 
 13
 The two "impartial" witnesses Travers untimely requested to testify at his administrative hearing would not have likely changed the outcome of the County administrative appeal or this appeal. In this appeal, for example, the alleged First Amendment violation turns on Chief Wilder's subjective intent as to (1) whether he believed Travers' "disrespectful" behavior was insubordinate, meriting the suspension of Travers, or (2) whether Chief Wilder's suspension of Travers was in retaliation for Travers exercising of his First Amendment rights. See Walker v. Schwalbe, 112 F.3d 1127, 1133 (11th Cir.1997) (noting that "the government's state of mind is a critical element in First Amendment" retaliatory claims). Travers has not suggested that the two excluded witnesses would have been able to offer any testimony that would shed light on Chief Wilder's perception of the events and on his subjective intent. Instead, Travers only intended to put forth these witnesses to refute the testimony of the County's witnesses that he was taunting and being insubordinate.
 
 
 14
 Since Travers had full and fair opportunity to litigate the factual issues at the administrative hearing, this Court must give the Merit System hearing officer's fact finding preclusive effect. Travers cannot re-litigate the facts in this case.
 
 
 15
 Under these facts, no constitutional violation took place. CEO Jones and Chief Wilder are entitled to qualified immunity.
 
 
 16
 REVERSED.